UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

        Case No. 14-cr-94 (JNE) (1)
        Case No. 18-cv-1181 (JNE)
        ORDER

Robert Allen King,

        Defendant.

A jury found Defendant guilty of possession with intent to distribute 50 grams or more of actual methamphetamine. The Court sentenced him to 180 months' imprisonment. Defendant appealed, and the United States Court of Appeals for the Eighth Circuit affirmed. *United States v. King*, 854 F.3d 433 (8th Cir. 2017). Approximately one year later, Defendant filed a motion to vacate, set aside, or correct his sentence. *See* 28 U.S.C. § 2255 (2012). Because the record conclusively shows that Defendant is not entitled to relief, the Court denies his § 2255 motion without an evidentiary hearing. *See Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013).

Section 2255 "provides a remedy for jurisdictional and constitutional errors." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc). "Beyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; 'an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."'" *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

1

Defendant made several claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that his "counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In assessing the reasonableness of counsel's conduct, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

### *Ground one*

Defendant asserted that he received ineffective assistance of counsel because his attorney, Jean Brandl,[1] failed "to object to a discovery and Brady violation." He maintained that the government introduced a page of his cooperation agreement at trial even though no part of the agreement was provided to him in discovery. Defendant's claim has no merit. Although she did not receive a copy of the agreement, Ms. Brandl acknowledged that she reviewed three pages of the agreement, including the one that was

---

[1] In this Court, Ms. Brandl represented Defendant from his arraignment through the filing of his notice of appeal. On appeal, the Eighth Circuit granted Ms. Brandl's motion to withdraw and appointed another attorney to represent Defendant.

introduced at trial, before the trial took place. Defendant has not demonstrated that the failure to obtain a copy of the agreement prejudiced him.

The Court rejects ground one.

### *Ground two*

Defendant asserted that he received ineffective assistance of counsel because Ms. Brandl failed to object to the government's motion to introduce a page of his cooperation agreement at trial. The following exchange took place during the government's cross-examination of Defendant at trial:

> Q: One part of your cooperation agreement was a list of rules that you were required to follow; is that correct?
>
> A: Yes.
>
> Q: And that list of rules is Government's Exhibit 19; is that correct?
>
> A: Yes.
>
> MS. BELL: I move to admit Government's Exhibit 19.
>
> MS. BRANDL: Your Honor, I would argue best evidence, that it's not the entire agreement.
>
> THE COURT: Why don't you lay some more foundation about what it is? I can't evaluate that.
>
> BY MS. BELL:
>
> Q: You were given a single page that had all the rules that you had to follow on it, correct?
>
> A: I was given a packet of papers.
>
> Q: I understand, but I'm asking about the rules that you were required to follow.
>
> A: This is one piece of the packet, yes.

3

> Q: I'm asking you was there one piece of paper --
>
> A: Yes.
>
> Q: -- that had a list of rules?
>
> A: Yes.
>
> Q: And is that that piece of paper?
>
> A: Yes.
>
> MS. BELL: I move to admit Government Exhibit 19.
>
> MS. BRANDL: No objection.
>
> THE COURT: Hearing no objection, 19 is received.

"The ineffective assistance standard is highly deferential to an attorney's judgment, particularly on issues such as whether to object to the introduction of evidence at trial." *United States v. Calhoun*, 721 F.3d 596, 604 (8th Cir. 2013). Defendant has not offered any non-speculative basis to demonstrate that the pages of the packet that were not introduced at trial contained anything but biographical information and a signature exemplar. Ms. Brandl's decision not to object to exhibit 19 falls within the wide range of reasonable professional assistance. *Cf.* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."); Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."). Defendant has not demonstrated any prejudice from the decision to refrain from objecting to exhibit 19.

The Court rejects ground two.

### *Ground three*

Defendant claimed that he received ineffective assistance of counsel because Ms. Brandl interviewed Mr. Caplan without an investigator present and failed to impeach Mr. Caplan's testimony with inconsistent statements that Mr. Caplan allegedly made when she interviewed him. The court of appeals summarized Mr. Caplan's testimony and the failure to impeach it:

> At trial, King called Caplan as a witness. Caplan testified that King entered the cooperation agreement with the [Southwest Hennepin Drug Task Force] so that King would not be charged for drug trafficking that he conducted "before" the agreement was reached. Caplan stated that the cooperation agreement did not give King permission to sell drugs on his own. He testified that if King had such an agreement, Caplan, as King's attorney, would have contacted the [Southwest Hennepin Drug Task Force] as soon as he found out about the arrest and tried to enforce the agreement. Instead, Caplan stated that he worked with King in an attempt to arrange for King to cooperate in his new case to reduce his charges or his sentence. King's trial counsel did not ask Caplan about prior statements that Caplan might have made that were inconsistent with his trial testimony.
>
> After Caplan's testimony was complete, and after a 15-minute break, King's trial counsel told the district court that she had no more witnesses. The government then indicated that it would call rebuttal witnesses. But before the government put on its first witness, King's trial counsel told the court, out of the jury's presence, "I have never faced this experience in 23 years, but the witness I just called did not say anything on the stand that I had expected him to. He told me something very different in my meeting with him Saturday." King's counsel explained that Caplan had, prior to trial, offered to corroborate King's testimony that he worked for the authorities when he was arrested. King's trial counsel expressed concern that she might have to become a witness herself to impeach Caplan's testimony. The court allowed the government to proceed with its witnesses, advising King's counsel that the court could take up the issue during surrebuttal, if any.

5

> King's trial counsel, however, never recalled Caplan to ask him about any prior statements. Nor did she allege during trial that any error occurred regarding Caplan's testimony or move for a mistrial based on Caplan's testimony. It was not until sentencing that King moved for a new trial based on Caplan's allegedly inconsistent testimony. The district court denied the motion.

*King*, 854 F.3d at 440.

Defendant submitted Ms. Brandl's affidavit to support his contention that he received ineffective assistance of counsel. In her affidavit, Ms. Brandl stated:

> When I was first appointed as a Criminal Justice Act attorney in this case, Mr. King's prior attorney, Allan Caplan, approached me to say that Mr. King had heavily assisted the Government in the Summer of 2015 and that I should take the case to trial based on a public authority defense. Mr. Caplan believed Mr. King had a public authority defense because he had a cooperation agreement with law enforcement and had immunity from the charges filed against him in this case due to his ongoing cooperation starting in the summer of 2015. Mr. Caplan had been present during the formation of that cooperation agreement, so it made sense to trust him on this issue. Mr. Caplan assured me he would absolutely testify at Mr. King's trial that Mr. King had a public authority defense.

Ms. Brandl's affidavit erroneously states that Defendant's cooperation took place in the summer of 2015. Defendant cooperated in the summer of 2013.

The Court need not decide whether Ms. Brandl's representation of Defendant fell below an objective standard of reasonableness. *Cf. Jones v. Butler*, 778 F.3d 575, 585 (7th Cir. 2015) ("[T]he normal practice is for the lawyer to conduct the conversation in the presence of a 'prover,' that is, a third party who can independently testify about the contents of the conversation. Jones's counsel, of course, failed to do this and found himself in a bind, having to choose between withdrawing as counsel to serve as witness or abandoning the attempt at impeachment. He chose the latter. . . . We agree with the

district court that Jones's counsel was deficient in failing to prepare for this contingency." (citation omitted)); *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) ("In that vein, '[t]he Eighth Circuit has found constitutionally deficient performance of trial counsel based on ineffective cross-examination where counsel allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements.'"). Even if it did, Defendant has not shown a reasonable probability that, but for the deficient performance, the result of his trial would have been different.

"When determining if prejudice exists, the court 'must consider the totality of the evidence before the judge or jury.'" *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (quoting *McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996)). Defendant signed a cooperation agreement on July 15, 2013, five days after law enforcement executed search warrants. Defendant testified that he cooperated so that he could leave the drug business and move to another state without fear of prosecution. His cooperation resulted in law enforcement's seizure of 20 pounds of methamphetamine in September 2013. After the seizure, law enforcement told Defendant his status as an informant was terminated; Defendant testified that he was not so informed. After the seizure of methamphetamine in September, he did not move out of state. The next month, Defendant passed on information about a heroin dealer who was staying at a hotel in Minneapolis to law enforcement. On cross-examination, Defendant acknowledged that he might have told a law enforcement officer that the officer could consider the information to be "a free one." In late 2013, Defendant moved out of state. A short time

later, he returned to Minnesota.  He and Mr. Caplan met with law enforcement in January 2014.  Defendant sought to become an informant to assist his girlfriend, whose probation had been revoked.  Defendant testified that he reestablished his contacts in the drug business only after this meeting took place.  Asked whether he considered his offer to cooperate in January 2014 to be part of his "previous promise" with law enforcement, Defendant testified that "[i]t was all an ongoing operation.  It never stopped."  According to law enforcement, Defendant was told at the January 2014 meeting that the Hennepin County Attorney had to agree to Defendant's cooperation.  The county attorney ultimately did not agree to Defendant's cooperation.  Defendant testified that he had no contact with a law enforcement officer for weeks in February 2014.  In late February 2014, law enforcement executed a search warrant.  Notwithstanding Defendant's attempt to dispose of the methamphetamine, law enforcement officers recovered eight packages of methamphetamine that resulted in this case.

There is no reasonable probability that impeachment of Mr. Caplan's testimony would have yielded a result different from the one reached at Defendant's trial.  *See id.* ("As the district court noted, in this instance we add Clara's proffered testimony to the evidence that was before the jury in the second trial, and then 'gauge the likely outcome of a trial based on this total body of evidence.'  In doing this analysis, the court should be 'mindful of (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution.'" (citation omitted)).  As the Court stated in denying Defendant's motion for

a new trial at his sentencing, "the idea that . . . law enforcement would say, go ahead, do whatever you want, sell drugs, keep the money, just, you know, have at it, and you're free and clear from here going forward is it's just not credible.  It's not possible.  It's just not how things work."

The Court rejects ground three.

### *Ground four*

Defendant asserted that he received ineffective assistance of counsel because Ms. Brandl missed deadlines to seek retesting of the methamphetamine seized at Defendant's home in February 2014.  Nothing in Defendant's submissions indicates that retesting of the methamphetamine would have yielded results that differed from those obtained by the chemist from the Minnesota Bureau of Criminal Apprehension.  *See King*, 854 F.3d at 442-43.  Defendant has not demonstrated prejudice from Ms. Brandl's failures to comply with deadlines to seek retesting of the methamphetamine.

The Court rejects ground four.

### *Ground five*

Defendant asserted that he received ineffective assistance of counsel because Ms. Brandl did not object to the presentence investigation report's description of his educational background.  The presentence investigation report did not state that he had attended college.  Defendant submitted a transcript to demonstrate he earned college credits.

At sentencing, the Court determined that Defendant "attempted to obstruct justice as that concept is incorporated in the sentencing guidelines" and increased the offense

9

level by two points. The Court based its determination on Defendant's "unnecessarily perjurious testimony." After recounting examples of false and misleading testimony given by Defendant, the Court noted that Defendant testified about his high grade point average at college, that the presentence investigation report did not disclose that Defendant attended college, and that no request to change the presentence investigation report's recitation of Defendant's educational background had been made. The Court stated that it appeared Defendant attempted to begin his testimony "with something to impress the jury."

On direct appeal, Defendant contested the imposition of an obstruction-of-justice enhancement. The Eighth Circuit rejected Defendant's argument:

> Here, the district court identified a false statement that King made at trial and made the independent finding that King's testimony "was unnecessarily perjurious." The court identified as "untrue" King's statement "I would get total immunity, and I would walk away" when asked what law enforcement promised him. This finding of falsity is supported by King's conduct when law enforcement executed the search warrant at his home. King threw the drugs out of the window and, when questioned, never mentioned that he was authorized to sell drugs.
>
> We conclude that district court's finding that King committed perjury at trial was not clearly erroneous. In making its decision, the district court stated that King did not obstruct justice by "going to trial" but did obstruct justice by "testifying falsely." The court found that King's "testimony seemed to go beyond [the public authority] defense." Although the district court did not discuss the materiality of the false testimony that it identified, we conclude that the record strongly supports such a finding. Had the jury believed King's testimony that the district court identified as false, such belief would have influenced the jury's determination of whether King was acting under public authority in possessing the methamphetamine.

*King*, 854 F.3d at 446-47 (alteration in original) (footnote omitted) (citations omitted).

10

That the obstruction-of-justice enhancement was properly applied did not depend on Defendant's testimony about his grade point average. Defendant has not demonstrated any prejudice from Ms. Brandl's failure to object to the presentence investigation report's characterization of his educational background.

The Court rejects ground five.

### *Ground six*

Defendant claimed that he received ineffective assistance of counsel because Ms. Brandl failed "to object to fraud concerning redacted trial testimony." According to Defendant, the transcript of the Mr. Caplan's testimony omits part of the government's cross-examination. Specifically, Defendant asserted that the transcript omits Mr. Caplan's affirmative answers to the government's questions about whether the prosecutor and Mr. Caplan work together all the time, whether the prosecutor was prosecuting a case against one of Mr. Caplan's clients, and whether that client was cooperating with the government.[2]

---

[2] During the government's cross-examination of Mr. Caplan, the following exchange did take place:

> Q: All right. And you have some experience working with cooperators, correct?
>
> A: Yes.
>
> Q: You and I have worked with a cooperator case before?
>
> A: Yes.

11

Defendant submitted Ms. Brandl's affidavit to support his contention that the transcript omits part of Mr. Caplan's cross-examination.[3] In her affidavit, Ms. Brandl stated:

> I do not remember the exact wording, but during trial [the prosecutor] questioned Mr. Caplan on the stand and asked him if they work together often and Mr. Caplan replied in the affirmative. She also asked him if they were working together at that time because he had a current client who was being prosecuted by her and he responded in the affirmative. I was quite surprised that this colloquy was not in the transcript of the proceedings because I remember those two questions very well.

Defendant's claim has no merit. The court reporter certified that the transcript is correct. *See* 28 U.S.C. § 753(b) (2012) ("The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had."). Defendant never filed a motion to correct the alleged omission. *See* Fed. R. App. P. 10(e); Fed. R. Crim. P. 36; *United States v. Brika*, 416 F.3d 514, 530 (6th Cir. 2005). Any such motion would fail. In the memorandum that he filed in support of his § 2255 motion, Defendant stated that the court reporter told Ms. Brandl before sentencing that Ms. Brandl had a complete copy of Mr. Caplan's testimony and that nothing was redacted from it. The Court has confirmed that the exchange that Defendant claims was omitted from the transcript did not take place. Although slight revisions could be made—for example, "please" on page 270 at line 24 should be "place"—the transcript of Mr. Caplan's trial testimony is accurate. This claim of ineffective assistance of counsel has no merit. *See Rodriguez v.*

---

[3] Defendant's sentencing position made a similar allegation.

*United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance.").

The Court rejects ground six.

### *Certificate of appealability*

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B) (2012); Fed. R. App. P. 22(b)(1). A court cannot issue a certificate of appealability unless the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, Defendant has not shown that reasonable jurists would find the rejection of his claims debatable or wrong. Thus, the Court declines to issue a certificate of appealability.

*Conclusion*

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's § 2255 motion [Docket No. 114] is DENIED.

2. A certificate of appealability is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 14, 2018

                                              s/ Joan N. Ericksen
                                              JOAN N. ERICKSEN
                                              United States District Judge